Filed 3/4/25  S.X. v. T.J. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| S.X.,<br><br>    Respondent,<br><br>    v.<br><br>T.J.,<br><br>    Appellant. | D084012<br><br><br>(Super. Ct. No. 21FD00678N) |

APPEAL from an order of the Superior Court of San Diego County, Victor M. Torres, Judge.  Affirmed.

Jenkins Law Firm and Erik C. Jenkins for Appellant.

No appearance for Respondent.

T.J. appeals from the trial court's order modifying S.X.'s domestic violence restraining order (DVRO) against him to include electronic harassment orders prohibiting him from certain conduct.  The court had previously granted S.X. a one-year DVRO against appellant after finding he violated the Domestic Violence Prevention Act (DVPA) (Fam. Code, § 6200 et seq.).  After the first DVRO expired in December 2020, appellant began harassing S.X. again, and the court eventually granted her another DVRO,

this time for five years.  Appellant continued to harass S.X., who then sought an order modifying her five-year DVRO to include certain electronic harassment orders.  The court granted her request and entered an order prohibiting appellant from, among other things, creating social media accounts and posts using S.X.'s name, video, audio, and likeness.

Appellant contends the trial court erred in modifying the DVRO because his conduct constituted protected free speech, and the order therefore violates his constitutional rights by restricting his protected speech.  We find no error and therefore affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

A. *First Domestic Violence Restraining Order*

S.X. first obtained a restraining order against appellant in December 2019.  According to S.X.'s declaration in support of her initial request for a DVRO, she and appellant began dating in July 2018, and he and his son moved in with her in February 2019.  In May 2019, S.X. asked appellant and his son to move out because her daughters were not comfortable living in the same place.  Appellant and his son moved out.  In June 2019, S.X. allowed appellant and his son to stay at her house while she was on vacation.  During this time, appellant instigated "a text war" with S.X.'s ex-husband, who texted S.X. telling her that appellant should never text him again.  S.X. confronted appellant over the phone and broke up with him, telling him to get out of her house immediately.

In July 2019, appellant had taken S.X.'s car in for an oil change at her request, and when he returned the car to her, he refused to give her the car key.  Appellant restrained her for hours, not allowing her to leave and wrestling her to ground several times as she screamed for help.  When S.X. tried to use her phone to take a video of him, he grabbed her phone and

2

smashed it in the street. He ultimately crashed her car into a fence and then left with it. S.X. and her neighbors called the police, who eventually found the vehicle and arrested appellant.

In August 2019, S.X. discovered that appellant had lodged a report with Child Welfare Services, alleging that she was allowing inappropriate and illegal behavior by her teenage daughters. S.X. then ended the relationship with appellant for good and told him never to contact her again. Appellant did not listen. He repeatedly called and e-mailed S.X., even after she blocked him on her phone and work e-mail address, and sent her cruel and harassing e-mails. S.X. stated that throughout the relationship, appellant regularly used fear and threats to force her to stay with him.

After a contested hearing, the court granted a one-year restraining order. The order instructed appellant stay away from S.X., her home, her workplace, and her vehicle. The order expired one year later, in December 2020.

B. *Second DVRO*

In February 2021, S.X. filed a second request for a DVRO against appellant. S.X. alleged in her supporting declaration that as soon as her first restraining order expired, appellant began stalking her, calling her friends and family, e-mailing her, and showing up at her house demanding to be let in. She further alleged that appellant harassed her online by creating a public social media account titled "the_[T.J.]_n_[S.X.]_truths," where he posted derogatory pictures, videos, and comments about her and her children and sent follower requests to S.X. as well as her staff, colleagues, friends, family, and children's friends. S.X. attached screenshots of e-mails, social media posts, and follower requests in support of her declaration.

The court granted a temporary restraining order and set a hearing on the request for a permanent DVRO. Appellant opposed the request and submitted a declaration in support of his request that the court dismiss S.X.'s temporary restraining order and deny her request for a DVRO. The hearing ultimately took place in part in April 2021 and was then continued to July 2021 for further testimony.

The trial court held the continued evidentiary hearing on S.X.'s second DVRO in March 2022. After hearing testimony from appellant and a third-party witness, the court announced its ruling from the bench. According to the minute order: "The court finds that [appellant]'s post describing [S.X.] was intended to harass and humiliate [S.X.]. The court finds that the incident with the suitcase and snowboarding gear is disturbing. The court finds although subtle, the pattern has been persistent. The court finds that [S.X.] is credible and proved her case by a preponderance of the evidence. The court finds that [appellant] needs to stay away from her and move on

4

with his life." The court issued a five-year DVRO that would expire in March 2027.

C. *Request for Order Amending Second DVRO*

In May 2023, S.X. filed a Request for Order (RFO) seeking to modify the March 2022 DVRO. S.X. requested that the court prohibit appellant "from naming, identifying or mentioning in any form of communication, including, on any social media site or account (i.e. Instagram)" various people and entities, including herself, her children and other family members, her businesses, her friends and their family members, her ex-husband and his company, certain of S.X.'s clients and vendors that had previously been targeted by appellant, and S.X.'s competitors.

On June 5, 2023, S.X. filed an ex parte application asking the court to impose electronic harassment orders on appellant, attaching as exhibits five screenshots that showed his escalating harassment of her on social media. S.X. alleged that appellant continued to harass her and was contacting her business competitors.

On June 7, after an ex parte hearing at which counsel for S.X. and appellant were both present, the court issued an order amending the DVRO to include the electronic harassment orders pending the RFO hearing. Specifically, the court directed appellant that he could not: (1) possess or have control over any photographs, video, or audio depicting S.X., her likeness, or her voice on any website, computer, laptop, cell phone, tablet, hard drive, disc, USB storage, or any other manner of digital media storage over which he has access or control; and (2) electronically distribute, publish, e-mail hyperlink, or make available for downloading any personal identifying information of S.X., or any photographs, video, or audio depicting her, her likeness, or her voice; (3) contact S.X. or her workplace by any electronic

5

means; (4) log in to, modify, or close any of the individual or group e-mails, social media accounts, computer accounts, or any other online account of S.X.; (5) share personal details of S.X. with anyone online or post personal details about her on any website; (6) create any accounts in S.X.'s name; (7) tag S.X. on any other website, social media platform, application, or software; (8) create or reply to any comment, post, or thread created by or about S.X. on any website, software, or application; (9) post or store any photographs, videos, audio recordings, or information about S.X. to any website; or (10) follow S.X. or maintain surveillance of her. The court noted in granting this relief that the amended orders would "be reconsidered at the next noticed motion hearing."

On June 15, S.X. filed another ex parte application, seeking a referral from the trial court to the district attorney's office for prosecution based on appellant's repeated and continuing violations of the amended DVRO.

On June 16, appellant filed an opposition to S.X.'s May 2023 RFO. He argued that the court had improperly made new findings on an ex parte basis and expanded the DVRO with no new admissible evidence. Appellant further argued that the social media posts in question concerned "an issue of public interest" and were constitutionally protected free speech.

On June 29, the court held a hearing on the RFO. Appellant continued to object to evidence submitted by S.X. in support of the RFO, including a screenshot submitted the day before the hearing. After hearing argument from both parties, the court issued its ruling on the RFO. The court found that the social media posts offered by S.X. as evidence of appellant's further harassment were sufficiently authenticated and reliable. The court noted that "the history of the case indicates that for whatever reason [appellant] is unable to control his obsessive and harassing behavior." Although appellant

had not directly contacted S.X., the DVRO "also restrains indirect contact," and the court rejected the notion that it had to make specific findings on each and every statement or social media post because it had "made findings that he is her harasser." The court "found that [appellant] was not credible at the hearing" and "continue[d] to find that [appellant] is not credible."

Regarding appellant's argument that his social media posts were about issues of public interest, the court found: "I do not find that there's any valid public interest here. The argument to me is not well taken. And a First Amendment right does not mean that a person has the right to exercise that First Amendment right for the purposes of harassment. And I find that that's what [appellant] is doing, is he's utilizing social media for the purposes of harassment. . . . [¶] . . . [¶] As I said, consistent with everything I've seen [appellant] do in this case to try to harass [S.X.], and the fact that he apparently continues to do it in -- regardless of my orders, are eventually, I think, going to land him in some hot water with the authorities." The court therefore granted the request to modify the DVRO: "So the Court is going to grant the motion. The electronic harassment orders that I made earlier stand." Further, the court granted S.X.'s request to refer the matter to the district attorney for possible prosecution under Penal Code section 653.2.

In November 2023, the court issued its statement of decision, which had been requested by appellant. The statement of decision concluded that appellant's arguments that the court's orders infringed on his constitutional rights lacked merit. Appellant failed to cite any authority for the proposition that a person found to be a perpetrator of domestic violence has free speech rights to continue to use social media or other electronic means to make comments about or to the protected party. This is particularly true where, as here, appellant "has already been found to be making similar social media

7

posts *about* Petitioner that are intended to harass and humiliate her." Further, the court continued to find that appellant lacked credibility. The court thus concluded that its orders did not curtail his legitimate free speech rights, but rather served to restrain behavior that harasses S.X., consistent with the DVPA. The court adopted the ex parte orders issued on June 7, 2023 as permanent modifications of the DVRO that would remain in effect until the conclusion of the original five-year restraining order against appellant.

## DISCUSSION

According to appellant, his social media posts about S.X. are protected under the First Amendment and do not fall under any free speech exceptions. He therefore contends the trial court erred when it issued the modified DVRO against him that included electronic harassment orders restraining him from making social media posts about S.X. We disagree.[1]

Appellant argues "[u]nprotected speech is not present in the instant case" because "none of the communications at issue were sent to [S.X.'s friend], [S.X.], their businesses or their families. None. All of the communications at issue are about (and not to) [S.X.'s friend] and/or [S.X.]. All comments about them were made in a public forum e.g., social media. The statements are all protected speech." Yet appellant does not point to any specific statements he made or actions he took that are now prohibited under the modified DVRO, nor does he explain why or how they constitute protected free speech. His failure to cite to any exhibits or specify statements in the

---

[1]     Appellant has not argued that the trial court's order was overbroad or should have been more narrowly tailored, so we have no occasion to decide those issues.

8

record that he claims are protected makes it difficult to thoroughly assess his arguments.[2]

Regardless, appellant's reliance on the fact that the RFO did not allege that he *directly* contacted S.X. is mistaken, and his argument has been rejected by other courts. (See, e.g., *People v. Obermueller* (2024) 104 Cal.App.5th 207, 221–222 ["[Defendant]'s argument that, after April 2021, he never sent messages directly to [victim]'s personal e-mail address is irrelevant. The statute has no requirement of direct contact with a victim."].) Like the stalking statute at issue in *People v. Obermueller*, the DVPA has no requirement of direct contact for conduct to constitute abuse. (See *ibid*.; Fam. Code, §§ 6203 [defining abuse as including "any behavior that has been or could be enjoined pursuant to Section 6320"], 6320 [authorizing the court to enjoin a party from, among other conduct, harassing and disturbing the peace of the other party].)

Nor are we persuaded by appellant's argument that "post relationship tell all's [*sic*] are common in family law courts" and are protected speech unless they constitute incitement, defamation, obscenity, fighting words, or true threats. The trial court here entered an order restraining appellant's speech *after* a contested hearing where it determined he had committed abuse under the DVPA. "This approach is consistent with well-settled First Amendment jurisprudence." (*In re Marriage of Evilsizor & Sweeney* (2015) 237 Cal.App.4th 1416, 1429–1431 [affirming trial court's grant of restraining

---

2    Appellant also improperly cites two unpublished decisions in violation of California Rules of Court, rule 8.1115, stating that he cites them "for information purposes only and not as authority for [his] position." But under rule 8.1115(a), citation of the opinion is not permitted—except in limited circumstances not present here—regardless of whether it is purportedly for informational purposes only. Counsel is admonished to refrain in the future from citing to unpublished cases.

9

order to prohibit defendant from further disseminating his ex-wife's downloaded information after making findings that defendant's conduct constituted abuse under the DVPA and concluding the order did not violate defendant's constitutional rights to free speech].)  Further, "substantial evidence in the record supports the trial court's findings (express and implied) of harassment for no legitimate purpose. . . .  The trial court therefore did not err in deeming the social media posts 'harassment' within the meaning of the statute."  (*E.G. v. M.L.* (2024) 105 Cal.App.5th 688, 704.)

In *E.G. v. M.L.*, the court affirmed a three-year civil harassment restraining order obtained by E.G., a former romantic partner of M.L.'s mother, against M.L., a minor.  The order prohibited M.L. from publishing E.G.'s personal or professional contact information online and from defaming or harassing her.  (*E.G. v. M.L., supra*, 105 Cal.App.5th at pp. 692–693.)  Like appellant here, M.L. asserted that her conduct had a legitimate purpose and was free speech activity protected by the First Amendment.  (*Id.* at p. 701.)  The Court of Appeal disagreed, explaining that as "a general principle, 'speech that constitutes "harassment" within the meaning of [the civil harassment statute] is not constitutionally protected, and the victim of the harassment may obtain injunctive relief.' "  (*Id.* at p. 702 [quoting *Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.* (2005) 129 Cal.App.4th 1228, 1250]; see also *Phillips, supra*, 2 Cal.App.5th at pp. 853–854 ["If the issue were properly before us, we would 'reject [appellant's First Amendment] argument because [his] ability to continue to engage in activity that has been determined after a hearing to constitute abuse [under the DVPA] is not the type of "speech" afforded constitutional protection.' "].)

It is clear from the RFO hearing transcript and statement of decision that the trial court here did not find credible appellant's testimony regarding the alleged legitimate purpose of his social media posts.  It is for the trial court as fact finder to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences.  (*E.G. v. M.L., supra*, 105 Cal.App.5th at pp. 702–703.)  On appeal, we do not reweigh the evidence but rather accept the trial court's findings and resolution of any conflicting evidence.  (*Id.* at p. 703.)  Based on the evidence of harassment, the trial court committed no error in concluding that appellant's speech was not protected.  We therefore conclude that the trial court did not err in modifying the DVRO to include the electronic harassment orders.

DISPOSITION

The order is affirmed.

BUCHANAN, J.

WE CONCUR:


DATO, Acting P. J.


KELETY, J.